IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BREANNE C., EDWARD C., DONNA C.,** | : | Civ. No. 1:08-1526 |
| **Plaintiffs** | : | |
| v. | : | |
| **SOUTHERN YORK COUNTY SCHOOL DISTRICT,** | : | (J. Rambo) |
| **Defendant** | : | |

# **M E M O R A N D U M**

## I.   Introduction

Before the court are two motions. First is Defendant Southern York County School District's ("the District") motion to dismiss certain claims by Plaintiffs. (Doc. 19.) These claims have been brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 42 U.S.C. § 1400 *et seq.*,[1] and Section 504 of the Rehabilitation Act of 1974 ("RA") and are premised on the allegation that the District failed to provide and/or denied Plaintiff Breanne C.[2] ("Breanne" or "Plaintiffs") a free appropriate public education ("FAPE").[3] (Doc. 13 at 1 of 28.)

---

[1] As amended, 20 U.S.C. § 601 *et seq.*, now titled the Individuals with Disabilities Education Improvement Act of 2004.

[2] The other Plaintiffs in this case are Breanne's parents, Edward C. and Donna C. Breanne brings these claims individually and by and through her parents.

[3] The IDEA was developed to ensure that children with disabilities and their parents receive "free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400 (d). The RA is the inverse of the IDEA and simply says that a school district which receives federal funding may not fail to provide FAPE to a student based on the fact that they have specialized learning needs. *W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir. 1995)(overruled on other grounds)(stating "while the IDEA is phrased in terms of a state's affirmative duty to provide a free, appropriate public education, the [RA] is worded as a negative prohibition against discrimination in federally funded programs.").

The second motion is Plaintiffs' motion to compel payment for an independent educational evaluation of Breanne done in the fall of 2007. Both motions have been fully briefed and are ripe for disposition. For the reasons set forth below, Defendant's motion will be granted in part and denied in part. Plaintiffs' motion will be denied.

## II.        Findings of Fact[4]

Breanne is a fourteen year old student who resides and attends school in the District. (Doc. 21-2, Def.'s Br. Ex. A, Decision of Due Process Hr'g, at 2.) On October 12, 2007, Breanne's parents requested a due process hearing be held to determine if Breanne would be eligible for special education services and provided with an Independent Education Program ("IEP"). Plaintiffs claim that they are entitled to compensatory education from the 2000-2001 (First Grade) school year to the present because Breanne has been denied a free, appropriate public education as required by the IDEA and the RA. (Am. Compl. Doc. 13, ¶ 1.)

Breanne has been attending school within the District since she was in kindergarten, and has continually experienced academic difficulty. (Decision of Due Process Hr'g, at 4.; Am. Compl., Doc. 13, ¶ 39.) On November 14, 2002, Plaintiffs made a written request to the District for a comprehensive evaluation because of concern over Breanne's academic struggles as well as a family history of dyslexia and Attention Deficit Hyperactivity Disorder. (Decision of Due Process Hr'g, at 4.) On November 15, 2002, the District issued a Permission to Evaluate

---

[4] These facts are based on a Due Process hearing held on February 5, 2008, April 11, 14, 25, 2008 and May 2, 5, 2008. Although normally a motion to dismiss is based on the facts in the complaint, in IDEA cases a court must "defer to the hearing officer's factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record." *P.P. v. W. Chester Area Sch. Dist.*, 557 F. Supp. 2d 648, 654 (E.D. Pa. 2008). Regardless, the facts at this stage in the litigation are not disputed by the parties.

2

Form and a Parent Input Form. After processing this information, the District conducted a psychological evaluation on February 12, 2003. (*Id.* at 5.) On February 27, 2003, the District concluded its Evaluation Report finding that Breanne had a specific learning disability in reading and writing, but not in math. (Compl., Doc. 13, ¶ 41.) The report also indicated Breanne might have anxiety issues, and that this potential problem should be monitored. (Compl., Doc. 13, ¶ 40.) Breanne's teachers reported she had difficulty with focus, concentrating, organization, and that the assignments she turned were usually of poor quality. (Decision of Due Process Hr'g, at 5.)

By the time Breanne was in fifth grade[5] (2005-2006 school year), she was receiving forty-five minutes of learning support each day. On May 17, 2005, a new IEP was created for her sixth grade year. Under this new IEP, Breanne was placed on a "monitor basis," which meant she was not receiving any direct special education support. (*Id.* at 8.) Breanne's time with her learning support teacher was also reduced to between five and ten minutes each week, during which time they could work on her reading skills. Under her previous IEP, Breanne would work on reading, English, spelling, social studies, science and health for approximately 240 minutes each "cycle."[6]

On March 15, 2006, the District issued a Permission to Reevaluate form. The form indicated that "[t]he IEP team will review all current data concerning your child" but "no new assessment tools, tests, or procedures will be

---

[5] The Hearing Officer in this case proceeded to jump to the 2005-2006 school year when making her findings of fact due to her application of a two year statute of limitations barring Plaintiffs' earlier claims. Because this court concluded *infra* that a two year statute of limitations does in fact apply, the gap in these facts is not relevant.

[6] The Hearing Officer does not specify what increment of time a "cycle" is, but the court presumes it to be something close to a week based on the forty-five minute daily sessions mentioned above.

used" for the re-evaluation. (*Id.*) Nothing on the form indicated that there was a possibility Breanne would be removed from the special education program. (*Id.* at 9.) On May 10, 2006, the District issued a Reevaluation Report recommending that Breanne be removed from special education because she did not have a disability and was not in need of special, individually designed education. (*Id.*) The Hearing Officer found that this report was based on "outdated" achievement and cognitive testing, as well as teacher comments and observations by the school principal. The Hearing Officer found that there was no indication that any of the parents concerns were taken into account. (*Id.*) In addition, no certified psychologist was used for any of the testing outlined in the report. (*Id.*)[7]

After hearing all of the testimony, the Hearing Officer concluded that beginning on October 12, 2005, the District failed to provide and/or denied Breanne FAPE in violation of the IDEA and RA. The Hearing Officer ordered the district to pay three hours per day of compensatory education during this period, and to reimburse Plaintiffs for an independent education evaluation ("IEE") that was obtained during the 2007 school year. The hearing officer relied on the 2004 amendments to the IDEA to conclude that any events occurring before October 12, 2005, were beyond the statute of limitations and therefore not reviewable. (*Id.* at 2, 38.)

### III. Procedural History

On August 13, 2008, Plaintiffs appealed the decision of the Hearing Officer to this court. During this same time period, Defendant appealed the decision

---

[7] The Hearing Officer made extensive additional findings relating to this evaluation report. However, those findings are not relevant to the instant motion and the court need not reiterate them at this time. (*See id.* at 10-27.)

of the Hearing Officer to the Special Education Due Process Appeals Review Panel ("Appeals Panel"), which accepted jurisdiction and rendered an opinion on September 4, 2008.[8] This opinion affirmed the order of the Hearing Officer on all but two issues. Due to the Appeals Panel rendering a decision, Plaintiffs filed a motion for Declaratory Relief which this court denied on October 1, 2008 seeking to have this court declare that the Appeals Panel lacked jurisdiction to hear the case. *See Breanne C., et al v. S. York County School Dist.*, 1:08-cv-1526, Mem. and Order Den. Mot. for Declaratory Relief (Oct. 1, 2008). On October 21, 2008, Defendant filed a partial Motion to Dismiss and brief in support. (Docs. 19, 21.) Plaintiffs filed an opposition brief on December 2, 2008, (Doc. 34) and Defendant replied on December 16, 2008 (Doc. 36). This motion is now ripe for disposition.

In addition to the motion to dismiss, Plaintiffs filed a motion to compel payment for an independent education evaluation which was conducted on Breanne in September 2007. (Docs. 41, 42.) This motion has also been fully briefed (Docs. 42, 43, 44) and is also ripe for disposition.

**IV.**         **Standard of Review**

Generally, among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice

---

[8] The confusion over the proper appellate procedure is centered around amendments to state law which were passed in June of 2008, to take effect July 1, 2008. This amendment changed the appellate process by eliminating the Appeals Panel, strengthening the Due Process hearing requirements and allowing appeals straight from the Due Process hearing to this court. However, the amendments were silent as to which cases were subject to the new appeal process. In light of this confusion, the Office of Dispute Resolution issued a statement announcing that any Due Process hearing requests made on or after June 15, 2008, would be subject to the new appellate process. In a decision dated October 1, 2008 this court determined that the Appeals Panel did have jurisdiction to hear this case because Plaintiffs' request for a Due Process hearing was made in October of 2007. (*See* Doc. 15, Mem. & Order Den. Pls.' Mot. for Declaratory Relief, Oct. 1, 2008.)

of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Phillips*, 515 F.3d 224, 233 (3d Cir. 2008). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 570; *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007). *See Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1949 (2009) (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*,

6

*Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**V.** **Discussion**

Defendant has filed a motion to dismiss certain claims in Plaintiffs' amended complaint. Defendant asks this court to dismiss all claims for damages under both the IDEA and the RA, all claims relating to events occurring before October 12, 2005, because they are barred by the IDEA and RA's statutes of limitations. Defendant also requests the motion to compel payment for an independent education evaluation be denied, as deciding this issue at this stage would be premature.

Plaintiffs counter that monetary damages are proper under both the IDEA and the RA. In addition, they argue that the IDEA's two-year statute of

limitations should not be applicable in this case because it went into effect after many of the events underlying Plaintiffs claims took place. They also argue that any potentially relevant statute of limitations under either the IDEA or RA should not be applied because of principles of equitable tolling. Finally, Plaintiffs maintain that it is the proper time for the court to order Defendant to pay for Breanne's September 2007 independent education evaluation. For the reasons set forth below, Defendant's motion will be granted in part and denied in part. And Plaintiffs' motion will be denied.

### a. Damages

In their complaint, Plaintiffs seek compensatory damages under both the IDEA and the RA. Defendant counters that compensatory damages are not an appropriate remedy under either statute. The court will address each statute in turn.

### i. IDEA

The IDEA states that "in any action brought under this paragraph [relating to administrative procedures], the court . . . shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). However, the Third Circuit has not made a determination as to whether or not compensatory damages are an "appropriate" remedy. *C.M. v. Bd. of Educ. of Union County Regional High School Dist.*, 128 Fed. App. 876, 880 (3d Cir. 2005) (stating that it is "not settled whether damages are recoverable in an action arising solely under the IDEA") (but allowing monetary damages under 42 U.S.C. § 1983 — an avenue for relief no longer allowed in IDEA cases.)

Although not binding, there is persuasive precedent holding that compensatory damages are not an available remedy under the IDEA. *C.J.G. v. Scranton Sch. Dist.*, 2007 U.S. Dist. LEXIS 88719 (M.D. Pa. 2007) (acknowledging that most Circuits have found that compensatory damages are inconsistent with the

8

purposes of the IDEA); *J.L. v. Ambridge Area Sch. Dist.*, 622 F. Supp. 2d 257, 270 (W.D. Pa. 2008); *Brandon v. Chichester Sch. Dist.*, Civ. No. 07-4687, 2007 WL 2155722 (E.D. Pa. 2007); *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108 (1st Cir. 2003) (stating that "tort-like money damages are not available under the IDEA"); *Polera v. Bd. of Educ.*, 288 F.3d 478 (2d Cir. 2002) (holding that the purpose of the IDEA is to provide educational services, not to compensate for personal injury; therefore, monetary damages are not allowable); *Sellers v. Sch. Bd.*, 141 F.3d 524 (4th Cir. 1998) (IDEA not meant to advance tort-like claims).

In addition, the Supreme Court spoke indirectly on this issue in *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985). In *Burlington*, the Court was analyzing the Education of the Handicapped Act ("EHA"). The EHA is the predecessor of the IDEA with identical language as that in 20 U.S.C. § 1415(i)(2)(C)(iii), specifically regarding "appropriate relief." *Id.* at 370. The issue in *Burlington* was whether or not a school district had to reimburse a family for educational expenses they incurred while the litigation was ongoing. The Court answered in the affirmative. *Id.* at 368. The Court noted that to determine "appropriate relief," one must look to the purpose behind the EHA. The primary purpose of the EHA (and, subsequently, the IDEA) is "to provide handicapped children with a 'free appropriate public education which emphasizes special education and related services designed to meet their unique needs.'" *Id.* at 370. The Court determined that reimbursement for educational expenses incurred while litigation was ongoing fit with this statutory scheme and was proper because such reimbursements are *not* damages. *Id.* at 371. The Court noted that it was Congress' intent to reimburse parents who are forced to pay for education expenses incurred because of the parent's belief that the current public accommodations were inappropriate. *Id.* at 372. Furthermore, the Court reasoned, this money should not

9

be classified as damages because it was merely reimbursing a family for an expense the school district should have born. *Id.* at 371.

The Supreme Court in *Burlington* did not award compensatory damages under the EHA. The Court distinguished between money awarded to a family for reimbursement of expenses incurred as a result of their ultimately successful litigation, and money awarded for damages. The language at issue in both the EHA and the IDEA is identical, and the court is persuaded that the Supreme Court's reasoning in *Burlington* interpreting the EHA is applicable to this court's interpretation of the IDEA.

Reimbursing Breanne with compensatory education and compensation for the IEE, not monetary damages, fulfills the purpose of the IDEA to the maximum extent permitted by the statute. For the aforementioned reasons, Breanne's claims for compensatory damages under the IDEA will be dismissed.

### ii. RA

Unlike the IDEA, the RA does provide an avenue for seeking compensatory damages. The Third Circuit has held "[t]he remedies for violation of Section 504 are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964. These remedies include *compensatory damages*, injunctive relief, and other forms of relief traditionally available in suits for breach of contract." *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (internal citations omitted). Accordingly, compensatory relief is an appropriate remedy under the RA, and Defendant's motion to dismiss on this matter will be denied.[9]

---

[9] Notable, there is a dearth of case law regarding when compensatory damages have actually been awarded under the RA. Although *A.W.* seems to suggest they are, that case was not directly on
(continued...)

### b. Statute of Limitations

Defendant argues that a two-year statute of limitations applies to Plaintiffs' claims thereby barring any claims occurring prior to October 12, 2005 — two years before Plaintiffs filed their request for a Due Process Hearing. Plaintiff asserts that recent amendments to the IDEA do not apply to claims occuring before these amendments took effect, and further that any statute of limitations imposed by the RA should not be applied under the doctrine of equitable tolling. The court will again analyze the two statutes seperately.

#### i. IDEA

The IDEA was amended in 2004 to add the following provision:

> A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.

20 U.S.C. § 1415(f)(3)(C).[10] Prior to the amendments, there was no statute of limitations relating to claims under the IDEA. Although passed in 2004, the amendments were not to take effect until July 1, 2005.

Plaintiffs here claim that because some of the events giving rise to their complaint occurred prior to July 1, 2005, the two-year statute of limitations is not applicable in this case. (Doc. 34, Pls.' Resp. in Opp'n to Def.'s Partial Mot. to Dismiss Pls.' First Am. Compl., at 5 of 17.) All parties agree, as does this court, that

---

[9] (...continued)
point and no claim had been brought directly under the RA so no compensatory damages were allocated under the RA. Therefore, although Plaintiffs claims will survive a motion to dismiss, it is yet to be determined if compensatory damages are an appropriate form of relief under the facts of this case.

[10] There are two general exceptions to the two-year statute of limitations which Plaintiffs do not argue apply here. These exceptions related to when a District has misrepresented or withheld information from parents. *See* 20 U.S.C. § 1415(f)(3)(D).

the IDEA does not apply retroactively. *See Lawrence Twp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 369 (3d Cir. 2005) (noting that the IDEA's 2004 amendments have prospective application only and that the provision in effect at the time the complaint was filed will apply). Third Circuit precedent along with a plain meaning of the statute show that "a parent . . . shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis or the complaint." 20 U.S.C. § 1415(f)(3)(C); *see also P.P.*, 557 F. Supp. 2d at 660 (noting that there arguably could be some confusion about whether the two year statute of limitations should be based on the date a due process hearing is requested or the date that a complaint is filed. But recognizing, as is the situation in the current case, that this question need not be resolved because both the due process hearing and the complaint were initiated after the 2004 amendments went into effect); *R.G. v. Glen Ridge Bd. of Educ.*, 2005 WL 3274957, at *4 (stating that "this Court must apply the IDEA as it existed when Plaintiff filed her complaint . . . ").

In this case, Plaintiffs filed their request for a due process hearing on October 12, 2007, more than two years and three month after the IDEA's amendments went into effect.[11] The court is persuaded that the plain language of the IDEA imposes a two-year statute of limitations on Plaintiffs' claims. Both the hearing officer and the appeals panel properly applied a two-year statute of limitations to Plaintiffs claims. As such, claims arising prior to October 12, 2005, are time barred. Defendant's motion to dismiss these claims will be granted.[12]

---

[11] Plaintiffs' complaint was filed on August 13, 2008. (Doc. 1.) More than three years after the amendments took effect.

[12] To note, prior to the IDEA's 2004 amendments, courts looked to analogous state statutes
(continued...)

### ii. RA

Unlike the IDEA, the RA does not have an explicit statute of limitations. When a statute does not expressly outline a statute of limitations, courts traditionally look to the most analogous state law statute of limitations. *Disabled in Action of Pa. v. Se. Pa. Transp.*, 539 F.3d 199, 207 (3d Cir. 2008). In Pennsylvania, the two-year statute of limitations for personal injury claims applies to RA cases. *Id.*

Defendant argues that because the IDEA is analogous to the RA this is an exception to the general rule and therefore the IDEA's two-year statute of limitations is applicable. Defendant cites to no cases which have held that the 2004 amendments to the IDEA should somehow change the fact that courts have always looked to the two-year statute of limitations for personal injury claims when deciding RA cases. Even if the court were to accept Defendant's contention, it would not make any difference in this case as either way a two-year statute of limitations applies. As such, the Hearing Officer and the Appeals Panel correctly applied a two-year statute of limitations to Plaintiffs' RA claims, and Defendant's motion to dismiss on this issue will be granted.

### iii. Common Law Tolling

Plaintiffs argue that the doctrine of equitable tolling and minority tolling should be applied to their claims arising more than two years outside the statute of limitations. (Doc. 34, Pls.' Resp. in Opp'n to Def.'s Partial Mot. to Dismiss Pls.' First Am. Compl., at 12 of 17.) These very same arguments from the very same litigants were made before the court in *P.P. v. W. Chester Area Sch. Dist.*,

---

[12](...continued)
of limitations when reviewing IDEA claims. Traditionally, a two-year statute of limitations was imposed – a fact which Plaintiffs seem to completely ignore. *See Jeremy H. by Hunter v. Mount Lebanon Sch. Dist.*, 95 F.3d 272 (3d Cir. 1996); *Tokarcik v. Forest Hills Sch. Dist.*, 665 F.2d 443 (3d Cir. 1981). The appropriateness of the previous two-year limitation need not be decided here, as the court finds that the 2004 amendments are controlling.

13

557 F. Supp. 2d 648, 661-665 (E.D. Pa. 2008). In *P.P.*, the Honorable Judge Giles did a thorough analysis of why the common law doctrine of equitable tolling does not apply to IDEA or RA claims like those brought by Plaintiffs. The court will briefly summarize the holdings in *P.P.* on these issues, but encourage the parties to review Judge Giles's memorandum regarding equitable and minority tolling. The same basic facts were at issue in that case, and the same attorneys litigated the matter. Although the parties were different, the same general issues were addressed.

As explained in *P.P.*, equitable tolling usually only applies in extraordinary circumstances, the facts of which generally fall into the one of the following three categories: "(1) if the defendant actively misleads the plaintiff; (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights; or (3) if a plaintiff has timely asserted his rights mistakenly in the wrong forum." *Id.* at 664 (citing *Miller v. New Jersey Dept. of Corr.*, 145 F.3d 616 (3d Cir. 1998).

None of these factors are present in this case. Although Plaintiffs make a cursory argument that they mistakenly asserted their rights in the wrong forum by appealing to this court instead of to the Appeals Panel, this does not explain why their claims prior October 12, 2005, should be tolled. Nothing in the facts of this case indicated that equitable tolling should apply under the circumstances present here. Plaintiffs' argument that equitable tolling should be applied to claims arising before October 12, 2005, is denied.

Plaintiffs also make an argument that minority tolling should apply to the facts of this case. Pennsylvania's minority tolling statute provides:

> If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for

14

> commencing an action after attaining majority as is
> allowed to others by the provisions of this subchapter.

42 Pa.C.S. § 5533. Minority tolling cannot be applied in this case because Breanne has not yet reached the age of majority. Furthermore, Breanne brought this action as an individual, as well as through her parents, so no tolling is necessary. Plaintiffs' argument in this regards must fail.

Because neither of the principles of equitable tolling or minority tolling apply in this case, Plaintiffs claims arising prior to October 12, 2005, will be dismissed.[13]

### c. Independent Education Evaluation

In addition to Defendant's partial motion to dismiss, before the court is Plaintiffs' motion to compel payment for an independent education evaluation. (Doc. 41.) This motion has also been fully briefed (Docs. 42, 43, 44) and is ripe for disposition. For the reasons that follow, Plaintiffs' motion will be denied.

In September of 2007, Breanne was the subject of an independent educational evaluation ("IEE"). This IEE was privately retained by Plaintiffs. (Doc. 42, at 1 of 6.) On July 30, 2008, the Hearing Officer in this case ordered the District to reimburse Breanne $3,775.00 for this evaluation. This decision was upheld by the Appeals Panel in their September 4, 2008 decision. (*Id.* at 2 of 6.) As explained above, Plaintiffs have since appealed to this court and Defendant has filed counterclaims, one of which directly related to the reimbursement of this IEE.

---

[13] As mentioned in the Procedural History of this case, there was some confusion regarding when new Pennsylvania provisions would take effect and eliminate the two-tiered state appeal process for IDEA claims. This court already determined that the Appeals Panel had jurisdiction to hear the claims. (Doc. 15.) However, because this court has determined that both the Hearing Officer and the Appeals Panel properly invoked a two-year statute of limitation on Plaintiffs' claims, it would be inefficient and repetitive to require Plaintiffs to appeal the Hearing Officer's decision to the Appeals Panel at this time. Because this court finds a two-year statute of limitations is applicable, no ruling need be made on whether Plaintiffs claims are waived, and this argument is deemed moot.

15

Plaintiffs claim the District is "required to immediately reimburse the parents for the cost of the IEE." (*Id.* at 3 of 6.) Defendant counters that this motion is premature and reimbursement payments should be determined once this court has ruled on the merits of the case. The court agrees this is not the appropriate point in the litigation to compel payment for the IEE.

Plaintiffs rely on the case of *Susquenita Sch. Dist. v. Raelee S.* for the proposition that this is the appropriate time for this court to order Defendant to reimburse Plaintiffs for an IEE that was conducted over two years ago. *See* 96 F.3d 78 (3d Cir. 1996). However, *Susquenita* deals with when a district can be compelled to make payments for a child's ongoing placement in a certain educational institution. In *Susquenita*, it was determined, after an IEP was conducted, that the learning disabled student should be placed in a private education institution because the school district had failed to provide her with an appropriate education. *Id.* at 79. An Appeals Panel held that parents were entitled to reimbursement for the private school tuition. Importantly, the Appeals Panel also determined that the private school would be considered the students "pendant placement" for purposes of all future potential litigation in the matter. *Id.* at 80. Under the IDEA, "pendant placement" means the following:

> (j) Maintenance of current educational placement
>
> 1)Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).[14] "The pendant placement provision was included in the IDEA to protect handicapped children and their parents during the review process." *Susquenita*, 96 F.3d at 82. The Supreme Court has reasoned that the impetus behind enacting the pendant placement provision was to prevent Districts from unilaterally being able to remove a child from school while the review process was underway. *Id.* (citing *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 373 (1985)).

The school district asked the District Court to stay the requirement that the parents be reimbursed until after the merits of the case had been decided. The District Court analyzed the request for a stay under the same standard as a preliminary injunction and concluded that, although the school district may suffer irreparable harm, this was not sufficient to grant the stay because it would mean the student would continue to be denied an appropriate education as required by her IEP. *Id.* at 81.

The Third Circuit narrowly analyzed the case and boiled it down to a "practical question of where [the student] should attend school while the review process proceeds, [and] who must pay for [the student's] placement." *Id.* The court then proceeded to thoroughly analyze the pendant placement provision of the IDEA and eventually concluded that because the Appeals Panel had deemed the private school to be the student's pendant placement location, the District must immediately pay for this placement while litigation was ongoing. *Id.* at 87. The court did not address whether payment for past tuition was to be immediately reimbursed, but only held that the district was to immediately take financial responsibility for the students private school tuition while litigation was ongoing, because it had been determined that the private school was the students pendant placement.

---

[14] Previously this was section 1415(e)(3); however, the language is the same as that analyzed by the *Susquenita* court.

17

In the instant case, Plaintiffs have jumped on the language "financial obligations . . . are immediate and may not be deferred until the close of litigation" (*id.* at 87) without taking into account any other aspect of the *Susquenita* opinion. The court need not decide the extent to which the *Susquenita* holding extends as the circumstances in that case are simply not present here. *Susquenita* dealt with the payment of private school tuition during ongoing litigation after an Appeals Panel determined that the private school was the student's pendant placement. That is not the question in the instant case. Here, Breanne is not incurring expenses at a private institution, nor are Plaintiffs seeking payment for ongoing tuition. Instead, they are seeking reimbursement for an evaluation — not a placement — done in 2007. The IEE in this case has no effect on Breanne's educational placement while this litigation is ongoing. The instant case is not a placement determination, and there are no pendant placement questions involved. The reimbursement of this evaluation will have no effect on Breanne's current placement and as such there is no immediacy or risk of potential harm involved. The appropriateness of reimbursement for this evaluation is a merits question which would be premature for the court to determine at this time. As such, Plaintiffs motion on this issue will be denied.[15]

## VI.     **Conclusion**

For the aforementioned reasons, Defendant's motion to dismiss claims for damages under the IDEA will be granted. However, Defendant's motion to dismiss claims for damages under the RA will be denied. Defendant's motion to dismiss IDEA and RA claims arising prior to the two-year statute of limitations will

---

[15] To be sure, the court is not denying reimbursement for Breanne's IEE. This is a merits questions which need not be determined at this stage in the litigation.

be granted.

        Furthermore, Plaintiffs' motion to compel payment for an IEE is premature and will be denied. An appropriate order follows.

                                        s/Sylvia H. Rambo
                                        United States District Judge

Dated: October 19, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BREANNE C., EDWARD C., DONNA C.,** | : | Civ. No. 1:08-1526 |
| **Plaintiffs** | : | |
| v. | : | |
| **SOUTHERN YORK COUNTY SCHOOL DISTRICT,** | : | (J. Rambo) |
| **Defendant** | : | |

# **O R D E R**

In accordance with the above memorandum, it is **HEREBY ORDERED** that:

1) Defendant's motion to dismiss (Doc. 19) is **GRANTED IN PART** and **DENIED IN PART** as follows:

a) the motion is **GRANTED** with regard to Plaintiffs' claim for damages under the IDEA, as well as, any claims under both the IDEA or the RA which arose prior to any claims which arose prior to October 12, 2005.

b) the motion is **DENIED** with regard to Plaintiffs' claims for damages under the RA.

4) Plaintiffs' motion to compel payment for an independent education evaluation (Doc. 41) is **DENIED** at this time without prejudice to renew at a later time.

                                                        s/Sylvia H. Rambo
                                                        United States District Judge

Dated: October 19, 2009.