IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BREANNE C., a minor, individually and by and through her parents EDWARD C., and DONNA C., and EDWARD C., and DONNA C., individually and on their own behalf,** | : : : : : : | **Civil No. 1:08-CV-1526** |
| **Plaintiffs** | : : | **(Judge Rambo)** |
| **v.** | : : : | |
| **SOUTHERN YORK COUNTY SCHOOL DISTRICT,** | : : : | |
| **Defendants** | : : : | |

# M E M O R A N D U M

## I.      Introduction

This case concerns the education of Breanne C.,[1] who, in the fall

of this year will enter the 11th grade in the Southern York County School District

("the District").  Breanne has been continuously enrolled in the District since she was

in kindergarten, and based on the court's review of the administrative record, it

appears that her parents, Edward and Donna C., have been continuously at odds with

the District concerning its education of Breanne during this entire time.

Currently before the court are cross-motions for judgment on the

supplemented administrative record, (Docs. 66 & 68), which brings to a head the

assertions by Breanne's parents that the District has failed to provide Breanne with a

free appropriate public education ("FAPE") as it is required to do pursuant to the

---

[1] Plaintiffs in the case are Breanne C, a minor, individually and by and through her parents, Edward C. and Donna C., as well as Edward C. and Donna C., as individuals and on their own behalf. For ease of reference, and because this case involves the education of Breanne, throughout this memorandum the court will refer to Plaintiffs collectively as Breanne.

Individuals with Disabilities Education Act ("IDEA"), 42 U.S.C. § 1400 *et seq.*,[2] and Section 504 of the Rehabilitation Act of 1974 ("RA").[3] Specifically, Breanne asks the court to: (1) find that the Pennsylvania Special Education Appeals Panel did not have jurisdiction to hear the appeal of the special education Hearing Officer's July 30, 2008 decision; (2) affirm the decision of the Hearing Officer who concluded that Breanne was denied a FAPE beginning October 12, 2005; (3) affirm the decision of the Hearing Officer that Breanne was entitled to compensatory education for the District's failure to provide FAPE, but overrule its decision to grant only three hours of compensatory education per day and instead award six hours of compensatory education per day; (4) affirm the Hearing Officer's decision to reimburse Breanne for the independent education evaluation ("IEE"); (5) affirm the Hearing Officer's decision to reimburse Breanne for the private reading tutoring expenses; and (6) award Breanne economic damages pursuant to § 504 of the RA.[4]

For its part, the District's cross-motion for judgment on the supplemented administrative asks the court to: (1) affirm the Appeals Panel's jurisdiction; (2) reverse the decision by both the Hearing Officer and the Appeals Panel, and specifically find that Breanne was provided with a FAPE at all times from

---

[2] As amended, 20 U.S.C. § 601 *et seq.*, now titled the Individuals with Disabilities Education Improvement Act of 2004.

[3] Section 504 of the Rehabilitation Act of 1973, 26 U.S.C. § 794, prohibits discrimination, on the basis of disability, by any program or activity which receives, or benefits from, federal financial assistance. Section 504, like the IDEA, requires that disabled students be provided with a FAPE, and sets forth requirements concerning identification, evaluation, appropriate services, and procedural safeguards.

[4] To the extent that the court affirms the jurisdiction of the Appeals Panel, Breanne asks the court to uphold its decision that she was denied a FAPE, affirm that she is entitled to compensatory education, but reverse its decision to award only one hour of compensatory education per day and grant six hours per day instead, affirm the decision to reimburse the IEE, reverse its decision not to reimburse her for private reading tutoring, award her reimbursement for private counseling, and award her compensatory damages under the RA.

October 12, 2005 to present; (3) reverse the award of compensatory education; and (4) reverse the Appeals Panel's decision to award reimbursement for the IEE.

The court has thoroughly reviewed the administrative record, and for the reasons that follow, will grant in part Breanne's motion for judgment on the supplemented administrative record. Specifically, the court will affirm the decision of the Hearing Officer and Appeals Panel that Breanne was denied a FAPE. The court will affirm the Appeals Panel's award of one-hour per day of compensatory education from October 12, 2005, through September 24, 2008, with a reasonable rectification period of thirty days, excluding summers. The court will also affirm the Appeals Panel's decision to award Breanne reimbursement for the IEE, and its decision to deny reimbursement for private reading tutoring. Finally, the court will not award Breanne reimbursement for her private counseling and will deny her request for additional damages under the RA. The court will deny the District's motion in its entirety.

## II.      Factual Background[5]

### A.      Kindergarten through 3rd Grade

At the time of the Hearing Officer's decision, Breanne was fourteen years old and in the eighth grade. (Doc. 62, Certified Admin. R., Ex. 13, Decision of Due Process Hr'g at 2 ("Due Process Hr'g").) Breanne has attended the District since she was in kindergarten, and has continually experienced academic difficulty. (*Id.* at 4, ¶¶ 1-2.) At the beginning of Breanne's third grade year, (2002-2003), Breanne's parents made a written request to the District for a comprehensive

---

[5]The facts are adopted by the court from the Hearing Officer's July 30, 2008 findings of fact, which were affirmed by the Appeals Panel. By memorandum and order dated October 19, 2009, the court restricted the scope of these proceedings to include claims from October 12, 2005 forward. (Doc. 45.) Despite this conclusion, the court references some facts that occurred prior to that date because they are necessary to give context to the court's decision.

evaluation because of concern over Breanne's academic struggles as well as a family history of dyslexia and Attention Deficit Hyperactivity Disorder. (*Id.* at 4, ¶ 5.)

After an evaluation, on February 27, 2003, the District determined that Breanne had a specific learning disability ("SLD") in the areas of reading and written expression, but not math. (*Id.* at 5, ¶ 7.) The evaluation also concluded that Breanne might have anxiety issues, which should be monitored. (*Id.* at 5, ¶ 12.) To rectify the SLD, the District formulated an Individualized Education Plan ("IEP") for Breanne.

At the end of her third grade year, in May of 2003, the District conducted a re-evaluation of Breanne's IEP. At this time, Breanne's teachers reported she had difficulty with focus, concentration, organization, and that the assignments she turned in were usually of poor quality. (*Id.* at 5, ¶ 13.)

## B. Fifth and Sixth Grades

By the time Breanne was in fifth grade, (2005-2006 school year), she was receiving forty-five minutes of learning support each day in a special education resource room. (Due Process Hr'g at 5, ¶ 14.) On May 17, 2005, a new IEP was created to be implemented for the following year when Breanne would be in the sixth grade. (*Id.* at 5, ¶ 15.) Under this new IEP, Breanne was placed on a "monitoring basis," which meant she was not receiving any direct special education support. (*Id.* at 8, ¶ 34.) Breanne's time with her learning support teacher was also reduced to between five and ten minutes each week, during which time they could work on her reading fluency. (*Id.* at 8, ¶ 35.) Under her previous IEP, Breanne would work on reading, English, spelling, social studies, science and health for approximately 240 minutes each week. (*Id.* at 8, ¶ 36.)

On March 15, 2006, towards the end of Breanne's sixth grade year, the District issued a Permission to Reevaluate form, which indicated that "[t]he IEP team

will review all current data concerning your child" but "no new assessment tools, tests, or procedures will be used" for the re-evaluation.  (*Id.* at 8, ¶ 37.)  Nothing on the form indicated that the reevaluation could result in a recommendation that Breanne be exited from the special education program.  (*Id.*)  However, that is exactly what happened: On May 10, 2006, the District issued a Reevaluation Report recommending that Breanne be removed from special education because it concluded that she did not have a disability and was not in need of specially designed education.  (*Id.* at 9, ¶ 38.)

The reevaluation report that was the basis for exiting Breanne from special education consisted of a record review, along with achievement testing with outdated instruments being compared to cognitive testing with an outdated instrument, and teacher comments.  (*Id.* at 8, ¶ 39.)  The teacher reports utilized for the reevaluation focused on behaviors observed by the teachers rather than academic ability.  (*Id.* at 9, ¶ 40.)  The reevaluation report also stated numerous areas of decline in Breanne's academic progress.  For instance, it noted that her oral reading was at the fifth grade range, and showed a decline from 108 words per minute in fifth grade—at a time she was receiving reading support—to 83 words per minute in the middle of sixth grade—at a time when she was merely being monitored.  (*Id.* at 10, ¶ 48.)  The writing sample administered at the time of the reevaluation demonstrated that Breanne was writing at the 75th percentile of the fifth grade level while in sixth grade.  (*Id.* at 10, ¶ 50.)

Despite these observations, on May 10, 2006, the District issued a Notice of Recommended Educational Placement ("NOREP") exiting Breanne from special education.  (*Id.* at 11, ¶ 56.)  Although they voiced concern, Breanne's parents approved the NOREP because they trusted the District to know whether Breanne needed an IEP.  After issuing the Reevaluation Report that formed the basis

for exiting Breanne from special education services, and issuing the NOREP recommending that she be exited from special education, the District did not consider offering Breanne a § 504 service plan, which, like an IEP, is meant to ensure that she is provided with a FAPE. (*Id.* at 12, ¶ 59.)

## C. Seventh Grade Evaluation

During the seventh grade, in September of 2006, Breanne's therapist assessed Breanne and formed a diagnostic opinion that she suffered from Attention Deficit Hyperactivity Disorder, combined type. (*Id.* at 12, ¶ 62.) As a result of the therapist's recommendation, Breanne began receiving medication to address this disorder. (*Id.*) On October 31, 2006, Breanne's parents requested that the District guide them through the process of obtaining a § 504 service plan for Breanne, including detailed reasons for the request. The District sent the required paperwork, which was returned by Breanne's parents. The District ultimately denied the request for a § 504 service plan.

Having been informed that the District would deny their request for a § 504 service plan, on November 30, 2006, Breanne's parents made a written request for a multidisciplinary evaluation to determine Breanne's eligibility for special education. (*Id.* at 13, ¶ 68.) The District conducted the evaluation in March of 2007, and concluded that Breanne was not a child with a disability, or that if she is a child with a disability she did not need specially designed instruction. (*Id.* at 13-14, ¶¶ 71, 85.)

## D. Independent Education Evaluation – and 8th Grade

After reviewing the evaluation, Breanne's parents requested permission to obtain an IEE at public expense. On May 1, 2007, the District agreed to fund an IEE and proposed that it be done by an evaluator from the Lincoln Intermediate Unit 12; however, the parents choose another evaluator—Dr. Margaret Kay. (*Id.* at 15-16,

¶ 92.) Breanne's parents hand-delivered a letter dated May 31, 2007, informing the District that they had chosen Dr. Kay to conduct the IEE and asked the District to let them know by June 1, 2007 whether they objected to Dr. Kay. (*Id.* at 16, ¶ 93.) The District did not respond to Breanne's letter until June 6, 2007, when they sent a letter stating that they would not pay for an IEE performed by Dr. Kay, although the District did indicate that it would pay for an IEE by an evaluator who met the District's standards. The District did not provide a written description of its criteria for independent evaluators. (*Id.* at 16, ¶ 97.) Ultimately, Breanne's parents decided to obtain an IEE from Dr. Kay despite the District's objections because they had already begun the process and were beginning to feel overwhelmed. (*Id.* at 16, ¶ 98.)

Dr. Kay conducted the IEE in September of 2007, when Breanne was at the beginning of 8th grade. After a battery of tests, Dr. Kay found that Breanne qualified under the disability classifications of Specific Learning Disability (basic reading, reading fluency, math calculation and written expression) and Speech and Language Impairment (phonological awareness, phonological memory, and rapid naming). (*Id.* at 20, ¶ 125.) Dr. Kay agreed with the District's psychologist that Breanne did not meet the full diagnostic criteria for ADHD, and therefore did not recommend classification under the category of "Other Health Impairment" at the time of the IEE. (*Id.* at 20, ¶ 126.) Breanne's parents provided a copy of the IEE to the District as soon as it became available.

### E.      **The District's Final Evaluation**

Following receipt of the IEE, the District prepared a final report that consisted of a review of the IEE, the initial screening results from Breanne's private reading tutor, a letter from Breanne's private therapist, input from Breanne's parents, and results from its own evaluation. After explaining its methodology, the District

continued to maintain its position that Breanne was not a child with a disability, or if she has a disability, she did not need specially designed instruction.  (*Id.* at 22, ¶ 139.)

> ### F.  Private Therapy, Reading Tutoring, and Intensive Work by Parents

Breanne has been seen by a therapist every two weeks to discuss her struggles with schoolwork, her anxiety about schoolwork and her interactions with her peers.  (*Id.* at 22, ¶ 142.)  Additionally, since November 2007, Breanne's parents have retained a private tutor for twice-weekly individual reading tutoring sessions.  (*Id.* at 22, ¶ 143.)  Since Breanne was in kindergarten, but more so after the sixth grade when she had an IEP but was no longer receiving special education services, Breanne's parents would spend two to three hours working with her on her homework in the afternoons and evenings.  (*Id.* at 27, ¶ 182.)

### III.    Procedural Background

> ### A.    Due Process Hearing

On October 12, 2007, Breanne's parents filed for a due process hearing because they believed that the District had denied Breanne a FAPE by conducting inappropriate reevaluations and offering inappropriate IEPs from the third grade school year to May 10, 2006, when she was exited from special education.

On July 30, 2008, after holding hearings over the course of six days, the Hearing Officer issued her decision, concluding that (1) the District denied Breanne a FAPE from October 12, 2005 to May 10, 2006,[6] and by inappropriately exiting her from IDEA coverage, from May 11, 2006, until it offered her an appropriate IEP;

---

[6]At the conclusion of the first hearing session on February 5, 2008, the Hearing Officer ruled that the applicable statute of limitations period was two years prior to filing (i.e., October 12, 2005).  (*See* Decision of Due Process Hr'g at 2.)

and (2) that Breanne's parents were entitled to reimbursement of the IEE at public expense and reimbursement for private reading tutoring during the seventh grade, but not reimbursement for private counseling. The Hearing Officer awarded Breanne three hours per day of compensatory education for this entire period. (*See* Due Process Hr'g at 29-37.)

### B. Appeals Panel

After the Hearing Officer's decision, the District filed exceptions with Pennsylvania's Special Education Appeals Panel. (*See* Doc. 62, Certified Admin. R., Ex. 2, Decision of Special Education Appeals Panel, *In re the Educational Assignment of B.C., A student in the Southern York County School District*, Sept. 4, 2008, at 7 ("Appeals Panel Decision").) Breanne's parents did not file exceptions with the Appeals Panel, instead they limited their actions at that level to challenging the Appeals Panel's jurisdiction based on then-new regulations which—effective July 1, 2008—removed the Appeals Panel from the review proceedings process. (*Id.*)

The Appeals Panel quickly reached its decision. On September 4, 2008, the Appeals Panel: (1) determined that it had jurisdiction to hear the District's appeal; (2) affirmed the decision of the Hearing Officer that Breanne was denied a FAPE from the sixth grade forward, but reduced the Hearing Officer's compensatory education award from three hours per day to one hour per day; (3) affirmed the Hearing Officer's reimbursement of the IEE; and (4) reversed the Hearing Officer's decision to reimburse Breanne's parents for private reading tutoring. (*See id.* at 11-17.) The Appeals Panel also determined that, in the absence of exceptions from Breanne's parents, it could not review the limitations period for compensatory education—i.e., from October 12, 2005 forward—and the Hearing Officer's denial of reimbursement for private counseling.

### C. District Court

On August 13, 2008, Breanne appealed the decision of the Hearing Officer to this court; thus, creating parallel proceedings between this court and the Appeals Panel. On August 29, 2008, Breanne filed a motion for declaratory relief pursuant to 28 U.S.C. § 2201(a) seeking to have the court declare that the Appeals Panel lacked jurisdiction to hear any appeal from the Hearing Officer's decision, and that any appeal must be taken directly to this court.

The confusion over the proper appellate procedure is centered around amendments to state law which were passed in June of 2008, to take effect July 1, 2008. These amendments changed the appellate process by eliminating the Appeals Panel, strengthening the Due Process hearing requirements, and allowing appeals straight from the Due Process hearing to this court. However, the amendments were silent as to which cases were subject to the new appeal process. In light of this confusion, the Office of Dispute Resolution ("ODR"), the agency designated by the Pennsylvania Department of Education to provide administrative hearings for special education cases, issued a statement announcing that any Due Process hearing requests made on or after June 15, 2008, would be subject to the new appellate process. (*See* Doc. 5-5, ODR announcement.)

In a decision dated October 1, 2008, the court deferred ruling on whether the Appeals Panel had jurisdiction to hear this case because the Appeals Panel had already issued its decision before the motion was fully briefed, and the court determined that it would be better to allow the record to fully develop. (*See* Doc. 15.)

On September 25, 2008, Breanne filed an Amended Complaint with the court seeking review of the Appeals Panel's decision as well as that of the Hearing Officer. (Doc. 13.) On October 21, 2008, the District filed a motion to dismiss all of

10

Breanne's claims pre-dating October 12, 2005, in effect seeking this court to uphold the Hearing Officer's decision to limit the time period under consideration. (Doc. 19.) Decision on that motion was staying pending referral to United States Magistrate Judge Andrew Smyser for possible settlement; the case did not settle and the motion became ripe on December 16, 2008.

On March 25, 2009, Breanne filed a motion to compel payment of the IEE. (Doc. 41.) That motion became ripe on April 22, 2009. By memorandum and order dated October 19, 2009, the court granted the District's motion to limit Breanne's claims to those arising after October 12, 2005, and denied Breanne's motion to compel payment of the IEE. (Doc. 45.) The court's decision to deny reimbursement of the IEE was without prejudice, as the court felt that the issue of reimbursement was best decided with the other issues presented in the case rather than preliminarily.

After being granted leave to file supplemental expert reports, on May 20, 2010, Breanne filed a motion for Judgment on the Supplemented Administrative Record, a brief in support, and her exhibits. (Docs. 66-67.) The District filed its Cross-motion for Judgment on the Supplemented Administrative Record, and its joint-brief in support of its motion and in opposition of Breanne's motion, as well as exhibits. (Docs. 68-70.) On June 9, 2010, the court issued an order combining the remaining briefing. (Doc. 71.) On June 25, 2010, Breanne filed her joint brief in opposition to the District's cross-motion, and reply to her motion for judgment on the administrative record. (Doc. 75.) On July 7, 2010, the District filed its reply to Breanne's opposition to its cross-motion. (Doc. 76.) Both motions are now ripe for disposition.

## IV.        Legal Standard

The IDEA requires that a state receiving federal education funding provide a FAPE to disabled children. 20 U.S.C. § 1412(a)(1). School districts provide a FAPE by designing and administering a program of individualized instruction that is set forth in an IEP. 20 U.S.C. § 1414(d). "The IEP must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's educational potential." *Mary Courtney T., et al. v. Sch. Dist. of Phila.*, 575 F.3d 235, 240 (3d Cir. 2009) (citations omitted). A parent who believes that a school has failed to provide a FAPE may request a due process hearing to seek relief from the school district. *See* 34 C.F.R. § 300.507.

After the administrative procedures are exhausted and the issue is before the district court, the IDEA sets forth the parameters for judicial review, and provides in relevant part:

> In any action brought under this paragraph the court—
> (i) shall receive the records of the administrative proceedings;
> (ii) shall hear additional evidence at the request of a party; and
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(C).

The Third Circuit has described the application of § 1415(i)(2)(C) as a non-traditional standard of review. Specifically, it requires a district court to "make its own findings by a preponderance of evidence . . . [but] also afford due weight to the [administrative] determination." *Mary Courtney T.,* 575 F.3d at 241 (internal quotation marks and citation omitted). The "due weight" standard, requires the court to consider the "[f]actual findings from the administrative proceedings . . . prima facie correct and, if the court fails to adopt those findings, it must explain its reasons

12

for departing from them." *Id.* (alterations in original, internal quotation marks and citation omitted.)

## V.      Discussion

### A.      Jurisdiction of the Appeals Panel

Before the court can give "due weight" to the administrative determination in this case, the court must finally reach the issue that it previously deferred: Did the Appeals Panel have jurisdiction to hear the appeal from the hearing officer? The court concludes that it did.

A parent who believes that a school has failed to provide a FAPE may request a due process hearing to seek relief from the school district. 34 C.F.R. § 300.507. The IDEA allows states the choice between a one-and two-tiered system for hearings. *See e.g.* , 34 C.F.R. § 300.514(b). Prior to July 1, 2008, Pennsylvania had a two-tiered system requiring decisions from a Hearing Officer to be appealed to an Appeals Panel before any action could be filed with a federal district court. First, a due process hearing was to be conducted by a Hearing Officer. *See Mary Courtney T.,* 575 F.3d at 240. If challenged, the Hearing Officer's decision was then subject to an independent review by Pennsylvania's Special Education Appeals Panel. *Id.* Upon final review by the Appeals Panel, an aggrieved party could appeal that decision to a federal district court. *See id.; see also* 20 U.S.C. § 1415(e).

On June 28, 2008, Pennsylvania amended its appeals process, eliminating the Appeals Panel and permitting parties to appeal the decision of a Hearing Officer directly to a federal district court. *See* 22 Pa. Code § 14.162(o). The regulations took effect on July 1, 2008, but do not specify which cases are subject to the new appeals process. However, shortly after the regulations took effect, the ODR posted a notice on its website stating that "any hearing requests filed with ODR on or

13

after June 15, 2008, will be considered as requests for such a hearing in a single-tier system and shall be handled accordingly." (*See* Doc. 5-5.)

In this case, Breanne filed for a due process hearing on October 12, 2007, at which time the process in Pennsylvania was two-tiered. The fact that the hearing officer did not issue her decision until July 30, 2008 when the new regulations were in effect, does not mean that Breanne's case fell within those regulations. The ODR has taken the position that hearing requests filed on or after June 15, 2008—fifteen days before the effective date of the new regulations—were requests for hearings under the single-tier system. Surely, ODR was aware of the fact that there were cases pending at the time of its decision to create a bright-line rule that cases filed before June 15, 2008, were within the two-tier system. Had ODR made its rules retroactive it would have been problematic from a due process stand point as disputants already in the system would have had the rules changed in the middle of the process.

Here, however, the rules remained the same throughout. Breanne's parents requested a due process hearing on October 12 2007, and expected that there would be a two-tiered administrative process. This is what she received. The regulations are silent about retroactivity and, consistent with the direction given by the Supreme Court, the court will not presume that they were meant to be retroactive. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.") (citations omitted). Accordingly, the court finds that the Appeals Panel had jurisdiction to hear the District's appeal from the hearing officer's July 30, 2008 decision.

## B.  Denial of FAPE

The central purpose of the IDEA is to ensure that "all children with disabilities have available to them a free and appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).  The IDEA and its regulations establish a comprehensive format by which a child must be evaluated to determine whether he or she has a disability and, if so, whether he or she is in need of special education.  Once this determination is made, an appropriate program of special education with related services must be developed and implemented.  This program is implemented through an IEP, which must be reasonably calculated to afford the child the opportunity to received a "meaningful educational benefit."  *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004); *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir. 1999).  An IEP confers a meaningful educational benefit when it is more than a trivial attempt at meeting the educational needs of the student, and it is designed to offer the child the opportunity to make progress in all relevant domains under the IDEA, including behavioral, social and emotional.  *M.C. v. Cent. Reg'l Sch. Dist.,* 81 F.3d 368, 394 (3d Cir. 1996).

### 1.  FAPE in Sixth Grade

The parties disagree about whether the IEP in place during Breanne's sixth grade year (2005-2006) was designed to provide her with a meaningful educational benefit.  If the sixth grade IEP was deficient than the District denied her a FAPE.  Both the Hearing Officer and the Appeals Panel found that the IEP failed to provide any meaningful educational benefit for Breanne.  (Decision of Due Process Hr'g at 30; Appeals Panel Decision at 11.)

Both entities concluded that this IEP was nothing more than Breanne being taught like the rest of the students in the District, which is contrary to the purposes of the IDEA. These conclusions by the Hearing Officer and the Appeals Panel are entitled to deference by the court and are presumed to be *prima facie* correct unless the District comes forward with extrinsic evidence to the contrary. *See Mary Courtney T.,* 575 F.3d at 241 (requiring the district court to give "due weight" to the "[f]actual findings from the administrative proceedings" and consider them to be "prima facie correct and, if the court fails to adopt those findings, it must explain its reasons for departing from them."); *see also, S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 271 (3d Cir. 2003) ("The issue of whether an IEP is appropriate is a question of fact.").

For its part, the District argues that the court should not defer to the factual findings of the Hearing Officer or the Appeals Panel because their reasoning was based on the faulty premise that the mere inclusion of Breanne in a monitoring IEP was a denial of a FAPE, when it was, at best, a procedural violation of the IDEA. The District's argument appears to be based on the premise that Breanne was not entitled to an IEP in the sixth grade at all, but that the District "allowed her to remain in special education so that her progress in regular education could be monitored during the 2005-2006 school year." (Doc. 69, Def.'s Br. in Supp. of Cross-Motion for J. on Supplemented Admin. R. at 21.) The District argues that "there is no evidence in the record that [Breanne] required specially designed instruction during the 2005-2006 school year beyond being monitored by a certified special education teacher," (*id.*), and that it should not be penalized for keeping Breanne in special education during the 2005-2006 school year (sixth grade) rather than exiting her at the end of the 2004-2005 school year (fifth grade). In support of its contention, the

District points to the fact that Breanne's grades in her regular education classes were As and Bs. (*Id.* at 22.)

The District's argument has much appeal. It would seem to the court's limited expertise in this area that a strong indicator of whether a child is in need of specialized education is the child's performance in the classroom. From that measure, it would seem to the court, that Breanne was functioning well in a non-individualized environment without the assistance of special education. In fact, the District's expert attempts to convince the court that this is in fact the case. Of course, Breanne's supplemental report opines just the opposite.

The testing performed to assess Breanne, which was discussed in great detail in the parties' briefs, their expert reports, and the opinions by the Hearing Officer and the Appeals Panel, is equally unhelpful. Neither party makes any effort to explain the purpose behind the various tests used, what they are designed to measure, and what they mean. Although the undersigned has been on the bench for over thirty years, the parties should not presume that this court has a storehouse of knowledge about every matter that comes before it for decision. It would have been helpful for the parties to have explained the testing in greater detail, especially because the parties disagree about the meaning of the results. The District asserts that Breanne's test scores indicate that she is functioning at or above grade level in all relevant criteria, whereas Breanne asserts that she is functioning below grade level in all relevant criteria. (*Compare* Def.'s Br. in Supp. of Cross-Motion for J. on Supplemented Admin. R. at 22, Doc. 69 *with* Pls.' Br. in Supp. of Motion for J. on Supplemented Admin. R. at 9-10, Doc. 67.)

Fortunately, all of these issues were presented to both the Hearing Officer and the Appeals Panel. Both discounted the District's arguments and credited the arguments made by Breanne. Regarding the issue of grades, the Hearing

Officer stated that Breanne's grades were good and the District's teacher's observations that Breanne was a good student, while honest assessments, "did not grasp the extent . . . to which Breanne's facade in school was being maintained by the intensive work with her family at home . . . and . . . with her [reading] tutor." (Due Process Hr'g at 35.)  The Appeals Panel affirmed this decision.  (Appeals Panel Decision at 11.)  Because the District has not pointed to any extrinsic evidence that was not considered by the Hearing Officer and the Appeals Panel in reaching the decision that Breanne was denied a FAPE during the 2005-2006 school year (sixth grade) the court, taking the conclusions reached by these administrative tribunals as *prima facie* correct, will affirm this decision.

## 2. Denial of FAPE after Sixth Grade

In addition to determining that Breanne was denied a FAPE in the 2005-2006 school year, both the Hearing Officer and the Appeals Panel determined that her denial of FAPE continued through 2007-2008.  Specifically, the Hearing Officer concluded that the District's reevaluation of Breanne in the 2006-2007 school year, seventh grade, contained several flaws.  For example, the District psychologist who conducted the evaluation used two assessment tests which were not co-normed. (Due Process Hr'g at 13, ¶ 73.)  Despite this flaw, the District's psychologist identified several areas of weaknesses, but inappropriately disregarded these weaknesses when she concluded that Breanne was functioning at grade level.  (*Id.* at 14, ¶ 83.)

The Hearing Officer compared this assessment with the IEE performed by Dr. Kay and concluded that the IEE was a better indication of Breanne's functioning.  (*See id.* at 34-35.)  The Hearing Officer concluded that the District ignored the results of the IEE in conducting its Final Evaluation and stated that "[t]he District's Final Evaluation is simply indefensible, and its conclusions may reflect a

perceived need to stay the course of viewing Breanne as ineligible given the raised stakes created by the likelihood of the ensuing due process hearing and or its opposition to the independent evaluator." (*Id.* at 35.)

The Appeals Panel affirmed the Hearing Officer's conclusion that Breanne continued to be denied a FAPE after the 2005-2006 school year, although it did so on slightly different grounds. Rather than go through the analysis that the Hearing Officer chose, which heavily criticized the analytical measures used by the District to assess whether Breanne was functioning at grade level, the Appeals Panel concluded that since the District provided an inadequate IEP during the 2005-2006 school year and inappropriately exited Breanne from special education at the end of that year, that it continued to deny her a FAPE because it never addressed her specific learning disability. (Appeals Panel Decision at 14.)

The District asks the court to reverse this decision because both the Hearing Officer and the Appeals Panel failed to support their determinations of eligibility with any evidence in the record. The District also argues that the assessment tools it used to evaluate Breanne met the criteria established under the IDEA for appropriate evaluations. Finally, the District argues that since Breanne was functioning at grade level she cannot be said to have a specific learning disability.

The court agrees with the District that the Appeals Panel's decision does not refer to anything specific in the record, relying instead on the fact that Breanne had met her burden of proof in demonstrating by a preponderance of the evidence that she was inappropriately exited from special education at the end of the 2005-2006 school year and then inferring from that fact that her denial of FAPE continued to go unaddressed. While it is true that the Appeals Panel's decision does not refer

to specifics, the court finds the logic of its conclusion to be compelling particularly in light of the well-developed record of the Hearing Officer.

The Hearing Officer thoroughly detailed the deficiencies in the District's assessment process and made credibility determinations about the witnesses who testified at the hearing. Specifically, the Hearing Officer stated:

> During this lengthy hearing the District produced many of Breanne's teachers, nearly all of whom testified to her earning good grades, being a good student, and not exhibiting anxiety. Notable, by way of interest, is that although Breanne's teachers frequently said she was at the top of her class, or one of the best students in her class, for most of the subjects the District removes the top 25-40% of its students out and up into another level of instruction, so that Breanne, with an IQ somewhere between 107 and 113 and a strong desire to hide her deficits and be a successful student, in indeed at the top of her class which is the bottom 60% of the total population in her grade.
>
> It is the belief of this hearing officer that although the teachers were testifying honestly, they did not grasp the extent . . . to which Breanne's facade in school was being maintained by intensive work with her family at home . . . and more recently also with her [reading] tutor. This hearing officer found the mother's testimony sincere, credible, genuine, and in fact, moving, and is absolutely certain that without the hours of nightly parental input in homework Breanne would never had been exited from special education and would never appear as well functioning in her classes as she was said to be.

(Due Process Hr'g at 35.) This court does not have the benefit of hearing the witnesses who testified at the hearing and, thus, cannot make credibility determinations nor is it in a position to second guess the credibility determinations made by the Hearing Officer. While the court may have found differently if it were the initial finder of fact, the District has not come forward with sufficient extrinsic evidence to overcome the *prima facie* validity of the Hearing Officer and Appeals Panel's conclusions concerning Breanne's grade level functioning.

The same is true for the assessment tools that the District used. Both administrative tribunals found these tools to be outdated and lacking as compared to those used by the independent evaluator. (*See* Due Process Hr'g at 34-35; Appeals Panel Decision at 14.) This court is not in a position to second-guess these determinations because the District has not come forward with insufficient evidence suggesting the contrary.

Accordingly, the court will affirm the decisions of the Hearing Officer and the Appeals Panel that Breanne was denied FAPE after she was exited from special education at the end of the 2005-2006 school year continuing to September 23, 2008, excluding summers.[7]

## C.    Compensatory Education

The IDEA empowers district courts with considerable discretion when fashioning a remedy. *See* 20 U.S.C. 1415(i)(2)(C)(iii) (the court "shall grant such relief as the court determines is appropriate.") Compensatory education is an appropriate remedy where a school district knows, or should know, that a child's educational program is not appropriate or that she is receiving only a *de minimis* benefit and fails to correct the situation. *M.C. v. Cent. Reg. Sch. Dist.*, 81 F.3d 389, 397 (3d Cir. 1996). Compensatory education is designed to provide eligible students with the services they should have received pursuant to a FAPE. *Lester H. v. Gilhool*, 916 F.2d 865, 873 (3d Cir. 1990) (holding that an award of compensatory education merely compensated the student for an inappropriate placement, belatedly

---

[7]After the Appeals Panel's decision, the District offered Breanne an IEP dated September 24, 2008. Breanne's parents disagreed with portions of the educational program, and indicated their belief that those portions did not offer Breanne FAPE. The appropriateness of the September 2008 IEP, and subsequent IEPs, has not been brought to a due process hearing or been addressed by a Hearing Officer. Accordingly, these IEPs are not subject to this decision and the court makes no finding about the appropriateness of the September 24, 2008 IEP or whether Breanne has been denied FAPE from September 24, 2008 forward.

allowing him to receive the remainder of his FAPE).  Finally, the amount of compensatory education is calculated by finding the period of deprivation of special education services and excluding the time reasonably required for the school district to rectify the problem.  *Cent. Reg'l Sch. Dist.*, 81 F.3d at 397.

From this standard, the court has little difficulty affirming the award of compensatory education calculated by the Appeals Panel.  The Appeals Panel, while affirming the award of compensatory education by the Hearing Officer, reduced the amount of education from three hours per day to one hour per day.  The Appeals Panel reasoned that the denial of a FAPE in this case was not pervasive because Breanne had achieved generally satisfactory educational performance in the general curriculum despite her undisputed disability—having a specific learning disability in the area of written expression.  In other words, although Breanne has a specific learning disability in written expression requiring special education, the scope of that disability is not pervasive enough to warrant three hours of compensatory education per day because she was making satisfactory educational progress with her prior IEP, which was forty-five minutes per day of specialized learning support.  The Appeals Panel reasoned that if this were sufficient to satisfy the IDEA for purposes of her IEP, than it was a satisfactory award of compensatory education.
The Appeals Panel also found that the District was entitled to a reasonable rectification period of thirty days from the initial denial of FAPE, thus counting the period of time eligible for compensatory education from November 12, 2005, rather than October 12, 2005.

The court finds the Appeals Panel's reasoning to be persuasive.  It seems entirely appropriate to the court to tie the award of compensatory education to that which Breanne should have received had she remained enrolled in an appropriate special education program.  Thus, the court will affirm the Appeals

Panel's award of one hour of compensatory education per day. The court will also affirm the calculation of this award after the imposition of a reasonable rectification period of thirty days. The standard established by the Third Circuit requires that a school district be given such a period, and Breanne has pointed to no precedent that would allow the court to deviate from this standard. *See Cent. Reg'l Sch. Dist.*, 81 F.3d at 397 ("[A] disabled child is entitled to compensatory education for a period equal to the period of deprivation, *but excluding the time reasonably required for the school district to rectify the problem.*") (emphasis added). Thus, the court affirms the Appeals Panel's decision to calculate the award of compensatory damaged from November 12, 2005. Breanne's expert opined that the award calculated by the Appeals Panel would be 484 hours. (*See* Doc. 67-3, Expert Rebuttal Report of Dr. Kay dated Apr. 19, 2010 at 5.) The court sees no reason to disagree with this calculation, and will award Breanne 484 hours of compensatory education for the District's denial of a FAPE from October 12, 2005 to September 23, 2008, excluding a reasonable rectification period of thirty days and excluding summers.

### D.     Reimbursement of the IEE

Both the Hearing Officer and the Appeals Panel awarded Breanne reimbursement for the IEE. The court will affirm this award for the reasons articulated by the Appeals Panel. It is clear from the record that Breanne's parents disagreed with the evaluation conducted by the District; the District did not comply with the procedural requirement of filing for a hearing; the District's evaluation was inappropriate because it was incorrect; and the IEE was at least arguably appropriate in terms of Breanne's eligibility for special education. (*See* Appeals Panel Decision at 16.) This is all that the regulations require, *see* 34 C.F.R. § 300.502(b), thus the award of reimbursement will be affirmed.

### E.     Reimbursement for Reading Tutoring

The Appeals Panel reversed the Hearing Officer's awarded of reimbursement for reading tutoring based on its belief that awarding reimbursement for this expenditure as well as compensatory education would be "remedial double-dipping" because the denial of a FAPE included the lack of appropriate reading instruction. (Appeals Panel Decision at 15.) The court agrees with the Appeals Panel's reasoning. Breanne's parents cannot expect to get the benefit of reimbursement of tutoring that was designed to address the educational deficiencies of the school district *and* a compensatory education award that is designed to remedy these same deficiencies. Therefore, the court will not award reimbursement of these expenses in addition to its award of compensatory education.

### F.    Reimbursement for Private Counseling

The Hearing Officer denied Breanne's request for reimbursement for private counseling based on the fact that there was scant evidence that the counseling was obtained principally to address school related issues or that the therapy was required for her to be able to access the curriculum. The Appeals Panel did not address this decision by the Hearing Officer because Breanne's family did not file exceptions with the Appeals Panel. The court finds the Hearing Officer's decision to be persuasive, and will affirm the Hearing Officer's denial of reimbursement for private counseling expenses.

### G.    Violation of Section 504 of the Rehabilitation Act

The Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq*., and section 504 of the Act specifically, prohibits discrimination on the basis of disability by schools that receive federal funding. 29 U.S.C § 794. In order to establish a violation of § 504 of the Rehabilitation Act, a plaintiff must prove that "(1) [she] is 'disabled' as defined by the Act; (2) [she] is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial

assistance; and (4) [she] was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." *Ridgewood Br. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238 253 (3d Cir. 1999) (citing *W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir.1995)), *abrogated on other grounds by A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 803-06 (3d Cir.2007). The plaintiff must demonstrate that the defendant knew, or should reasonably have been expected to know, of her disability but need not prove that the discrimination was intentional. *Ridgewood*, 172 F.3d at 253. The Third Circuit has determined that "there are few differences, if any, between IDEA's affirmative duty and section 504's negative prohibition and have noted that the regulations implementing section 504 require that school districts provide a free appropriate education to each qualified handicapped person in its jurisdiction." *W.B.*, 67 F.3d at 492-93 (internal quotation marks and alterations omitted).

Based on the court's review of the administrative record, it finds that the District violated § 504 because it denied Breanne a FAPE. However, the court will not award separate damages for this violation. There is considerable overlap between the IDEA and § 504 when the issue concerns the denial of FAPE. *See id.* Moreover, the court believes that its compensatory education award appropriately compensates Breanne for the District's denial of a FAPE, and that no additional damages, above and beyond the compensatory education award, are warranted under the facts of this case.

## H. <u>Attorney Fees</u>

The IDEA provides that: "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs — (I) to the prevailing party who is the parent of a child with a disability[.]" 20 U.S.C. 1415(i)(3)(B)(i)(I). As the prevailing party, Plaintiffs are

entitled to reasonable attorneys' fees. Plaintiffs are directed to file a petition for attorneys' fees within ten days of the date of the accompanying order.

**VI.**      <u>**Conclusion**</u>

The Appeals Panel began its discussion of the case with this sentence: "This case is overly long and complicated." (Decision of Appeal Panel at 7.) This court chooses to phrase the statement this way: The *parties* have made this case overly long and complicated. Since kindergarten, the parties have squabbled over almost every imaginable decision that has taken place in the education of Breanne. It has been almost three years since Breanne's parents filed for a due process hearing and nearly five years since Breanne was given her "monitoring" IEP for her sixth grade year. This court is now faced with the task of determining whether Breanne was properly educated, and, if she was not, what award of compensatory education is appropriate to "make up" for her inappropriate education. The transaction costs associated with reaching this decision have been enormous, and will no doubt far exceed the cost of the remedy imposed by the court.

Nonetheless, in accordance with the foregoing, the court finds that the Appeals Panel had jurisdiction to hear the District's appeal from the hearing officer's July 30, 2008 decision. The court finds that Breanne has been denied a FAPE from October 12, 2005, until at least September 23, 2008. The court will award Breanne 484 hours of compensatory education for the District's denial of a FAPE from October 12, 2005 to September 23, 2008, excluding a reasonable rectification period of thirty days and excluding summers. The court will award Breanne reimbursement for the IEE. The court will deny reimbursement for private reading tutoring and

private counseling. Finally, as the prevailing party, Plaintiffs are entitled to reasonable attorneys fees. An appropriate order follows.

                                                 s/Sylvia H. Rambo
                                                 United States District Judge

Dated: August 11, 2010.

| | | |
|---|---|---|
| **BREANNE C., a minor, individually<br>and by and through her parents<br>EDWARD C., and DONNA C.,<br>and EDWARD C., and DONNA C.,<br>individually and on their own behalf,** | : <br>: <br>: <br>: <br>: <br>: <br>: | **Civil No. 1:08-CV-1526**<br><br>**(Judge Rambo)** |
| **Plaintiffs** | : <br>: | |
| **v.** | : <br>: <br>: | |
| **SOUTHERN YORK COUNTY<br>SCHOOL DISTRICT,** | : <br>: <br>: | |
| **Defendants** | : <br>: | |

# O R D E R

In accordance with the attached memorandum, it is **HEREBY
ORDERED** that:

(1) Plaintiffs' Motion for Judgment on the Supplemented
Administrative Record, (Doc. 66), is **GRANTED IN PART AND DENIED IN
PART** as follows:

(a) The court finds that Pennsylvania's Special Education
Appeals Panel had jurisdiction to hear Defendant's appeal from the
Hearing Officer's July 30, 2008 decision.

(b) Breanne was denied a free appropriate public education from
October 12, 2005, until September 23, 2008.

(c) The court awards Breanne 484 hours of compensatory
education for the District's denial of a FAPE from October 12, 2005 to
September 23, 2008, excluding a reasonable rectification period of
thirty days and excluding summers.

(d)  Breanne is entitled to reimbursement for the independent educational evaluation obtained by her parents.

(e) The motion is denied in all other respects.  Specifically, the court denies Breanne's request for reimbursement of private reading tutoring and private counseling.

(f) As the prevailing party, Plaintiffs are entitled to reasonable attorneys' fees, and Plaintiffs shall file a petition for attorneys fees within thirty (30) days from the date of this order.

(2)    Defendant's Cross-motion for Judgment on the Supplemented Administrative Record, (Doc. 68), is **DENIED.**

(3)    The Clerk of Court shall enter judgment for Plaintiffs and against Defendant consistent with this order.


s/Sylvia H. Rambo
United States District Judge

Dated:  August 11, 2010.